RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE  10 / 20 / 08
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MONA EGLAND GRIFFIN | : | DOCKET NO. 07-790 |
| VS. | : | JUDGE TRIMBLE |
| CITGO PETROLEUM CORPORATION | : | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Before the Court is: (1) "Defendant's Motion for Summary Judgment as to Plaintiff's Claims of Retaliation" (doc. #48) and (2) "Defendant's Motion for Summary Judgment as to Plaintiff's Sexual Harassment Claims" (doc. #55). Defendant, Citgo Petroleum Corporation ("Citgo") seeks judgment in its favor pursuant to Federal Rule of Civil Procedure 56. Also, before the Court is "Defendant's Motion to Strike Evidence of Audio Recordings" (doc. #70) wherein Citgo moves the Court to strike from the record Plaintiff's exhibit 10, along with any other incompetent evidence upon which Plaintiff relies in opposition to Citgo's motions for summary judgment.

### FACTUAL STATEMENT

Plaintiff, Mona Griffin, has been an employee of Citgo since 1991. Ms. Griffin alleges that Matthew Fitzgerald, a Citgo employee, began sexually harassing her in 2001. On January 27, 2005, Ms. Griffin reported the alleged sexual harassment to Citgo's Management. Citgo immediately commenced an investigation of Ms. Griffin's claims and suspended Mr. Fitzgerald without pay effective February 1, 2005. As a result of the investigation, Citgo terminated Mr. Fitzgerald's employment on February 25, 2005.

On February 27, 2005, Ms. Griffin reported to Citgo Management that she thought she was

being retaliated against. Specifically, she reported the following four (4) incidents:

> (1) Co-worker, Todd Newell, made a statement in the presence of Ms. Griffin and several other co-workers that he intended to find out who got Mr. Fitzgerald fired and that they were going to pay.
> (2) After the statement by Tod Newell, as Ms. Griffin was walking on the first floor of the Unit a 2" X 16" bolt fell from the second floor, about one foot in front of her. Todd Newell and Celina Wilbourn were in the immediate vicinity of the direction from which the bolt originated.
> (3) On another occasion, Kenneth Fletcher, another co-worker, opened a "Quick Close Valve" and hot oil inadvertently spilled on Ms. Griffin's shoes; she was protected from injury by protective wear.
> (4) On February 27, 2005, as she was walking on the first floor of the unit, Ms. Griffin was drenched by water while Todd Newell was washing the second deck of the unit.

After reporting these instances of alleged retaliation, Ms.Griffin requested that she be trained for the Chief Operator and Console Operator positions and subsequently transferred out of the Coker Unit to the Medical Department. In an attempt to accommodate the request, Citgo management created a position for Ms. Griffin and transferred her to the Medical Department as an Industrial Hygiene Advisor. The terms and conditions of the position, including salary and benefits were negotiated by Ms. Griffin's counsel. On June 27, 2005, Ms. Griffin accepted the job offer. As required by the Collective Bargaining Agreement, the position was posted for bidding on July 22, 2005. Ms. Griffin started her new job on August 29, 2005.

## **Motion to Strike**

Citgo maintains that Plaintiff's exhibit 10 should be stricken from the record because it lacks any evidence of authenticity, accuracy, reliability, or completeness. The exhibit purports to be a 72-page "transcript" of allegedly one or more conversations Ms. Griffin had on or about November of 2004, with Matthew Fitzgerald, whom Ms. Griffin alleges sexually harassed her. Citgo complains of the lack of authenticity, foundation and reliability of the underlying taped audio recording from which the transcript

was made. Citgo asserts that Mr. Fitzgerald has never heard nor been confronted with the tapes and has never acknowledged that it is he who is recorded in discussion with Ms. Griffin on the tapes. Ms. Griffin made the tapes available to Citgo, however, they were not submitted as evidence to this Court.

Citgo hired an audio expert, James A. Griffin, who analyzed the three tapes tendered by Ms. Griffin. Mr. Griffin made the following pertinent conclusions in his report regarding the tapes:

4. **SUMMARY AND CONCLUSIONS**

a. The 3 tapes contain seven (7) conversational segments, only two of which are complete conversations. The five (5) incomplete recordings are fragments of conversations of unknown duration. It is not possible to determine how much conversation occurred before the recording began or after the recording concluded. It is not possible to scientifically determine if any of the fragments are associated with other fragments.

b. The three (3) items marked by an asterisk (*) above can not be conclusively identified without examining the tape recorder which made the recordings.

c. The calls at 00:21 of Tape 2A and 00:07 of Tape 3A erased previously existing calls or attempted calls. It is not possible to know exactly what was erased.[1]

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c).[2] While the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements.[3] Citgo argues that pursuant to Rule 901(a) of the Federal Rules of Evidence, the transcript is not admissible. Rule 901(b) in pertinent part provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." Citgo further buttresses their argument by the fact that in her deposition under oath, Ms. Griffin admitted that the

---

[1] Defendant's exhibit A, attached to motion to strike.

[2] See *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548 (1986).

[3] See *Goodwin v. Johnson,* 132 F.3d 162, 186 (5th Cir. 1997)(finding that the hearsay statements in an affidavit were "incompetent summary judgment evidence").

recordings are incomplete because she taped over certain portions of the conversations.[4] This is corroborated by Citgo's audito expert who noted similar, but more numerous deficits in the recordings.[5]

Citgo also argues that the transcript is inadmissible for lack of authentication and/or foundation because while Plaintiff alleges that the transcript represents multiple conversations with Mr. Fitzgerald over the course of three days, Plaintiff has made no effort to authenticate the tapes despite the fact that Mr. Fitzgerald was deposed.

Without proper authentication, the transcript is not admissible at this time, but for the sake of rendering this decision, the tapes do not add anything to the deposition testimonies of the parties. If anything, the taped conversation would be prejudicial to Ms. Griffin in that she initiated the call and she was the party who proposed the sexual favors in return for training. The Court finds that the transcript, or Plaintiff's exhibit 10 is inadmissable evidence at this time because of lack of authentication.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[7] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving

---

[4] Defendant's exhibit B, Griffin depo. pp. 98-99.

[5] Defendant's exhibit A.

[6] Fed. R.Civ. P. 56(c).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

party.[8] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[9] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[10] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[11] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[12] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[13]

## LAW AND ANALYSIS

In her complaint, Ms. Griffin alleges sexual harassment and retaliation. Ms. Griffin asserts that Mr. Fitzgerald was her supervisor and that he was in control of her job and her opportunities for training and advancement. She complains that Mr. Fitzgerald denied her training and promotion opportunities because she refused to engage in a sexual relationship with him. She also complains that after she reported the alleged sexual harassment, she was retaliated against by co-workers and Citgo.

---

[8] *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999).

[9] *Vera v. Tue,* 73 F.3d 604, 607 (5th Cir. 1996).

[10] *Anderson,* 477 U.S. at 249.

[11] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

[12] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[13] *Anderson,* 477 U.S. at 249-50.

## Sexual Harassment Claim

A Title VII violation may be established by proving "that discrimination based on sex has created a hostile or abusive working environment."[14] To overcome a motion for summary judgment on a Title VII discrimination claim, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.[15] The prima facie case must show that (1) she belonged to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.[16] The final element is not required in order to subject the employer to vicarious liability "where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim."[17]

In *Casiano v. AT&T Corp.*,[18] the Fifth Circuit has outlined a roadmap to be followed in all cases alleging sexual harassment by a supervisor. The first step is to determine whether the complaining employee has or has not suffered a "tangible employment action."[19] If the court determines that the employee has suffered a tangible employment action, then the case is classified as a "*quid pro quo*

---

[14] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

[15] *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001).

[16] *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986); *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999).

[17] *Celestine*, 266 F.3d at 353; *Burlington Indust., Inc., v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

[18] 213 F.3d 278 (5th Cir. 2000).

[19] *Casiano*, 213 F.3d at 283.

case; if she has not, the suit is classified as a case of "hostile environment."[20]

In a *quid pro quo* case, the court must determine whether the tangible employment action actually resulted from her acceptance or rejection of the supervisor's alleged harassment.[21] If no such nexus is shown, then the employer is not liable for the supervisor's conduct.[22] If a nexus is proven, the employer is vicariously liable for the supervisor's behavior and cannot avail itself of the one and only affirmative defense provided in *Faragher v. City of Boca Raton*[23] and *Burlington Industries v. Ellerth*.[24]

If the plaintiff cannot prove that she suffered a tangible employment action, the case is deemed to be a hostile environment case.[25] The plaintiff has the burden of proving that the harassment was not only severe or pervasive, but also that it was based on the plaintiff's sex and that it altered the terms and conditions of the plaintiff's employment.[26] If the allegations of harassment are not sufficiently severe or pervasive or are not based on sex, then the employer is not liable for the supervisor's conduct.[27] If, however, the allegations are found to rise to an actionable level, the employer is entitled to assert the *Faragher/Ellerth* affirmative defense.[28]

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] 524 U.S. 775, 792 (1998).

[24] 524 U.S. 742 (1998).

[25] *Casiano*, 213 F.3d at 283.

[26] *Casiano*, 213 F.2d at 284.

[27] *Id.*

[28] *Id.* at 284.

The affirmative defense is comprised of two elements: (1) that the employer exercised reasonable care to prevent or correct promptly any sexual harassment; and (2) that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.[29]

## *Quid pro quo harassment*

To establish a claim of *quid pro quo* harassment, Plaintiff must prove that she suffered a tangible employment action because of her acceptance or rejection of sexual harassment by her supervisor.[30] Citgo maintains it cannot be held liable for the alleged sexual harassment because Matthew Fitzgerald does not qualify as a statutory supervisor, Ms. Griffin did not suffer a tangible employment action, Citgo had no knowledge or reason to know of the alleged harassment, and when it was informed of the alleged harassment, it took prompt remedial action which immediately ceased all further misconduct by Mr. Fitzgerald.

Harassment "by co-workers differs from harassment by supervisors. . . ."[31] Because employers do not entrust mere co-employees with any significant authority with which they might harass a victim, employers are liable for a co-employee's harassment only "when they have been negligent either in discovering or remedying the harassments."[32]

Courts have consistently held that low-level supervisors with little to no supervisory authority

---

[29] *Id.*, citing *Ellerth, supra* and *Faragher, supra*.

[30] *Casiano*, 213 F.3d at 284.

[31] See *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1422 (7th Cir. 1986).

[32] See *Williamson v. City of Houston*, 148 F.3d 462, 465-66 (5th Cir. 1998).

are not "statutory supervisors" withing the meaning of Title VII.[33] Whether an employee qualifies as a "statutory supervisor" depends upon whether the supervisor possesses authority of a "substantial magnitude."[34] This Court has recognized that to qualify as a statutory supervisor, the employee must possess authority to "hire, fire, demote, promote, transfer, or discipline an employee."[35] Without a substantial showing of such authority, an employee cannot qualify as a supervisor within the meaning of Title VII as a matter of law.[36]

Mr. Fitzgerald's position for Citgo was a "day foreman" or "unit supervisor." Mr. Fitzgerald could not (1) hire employees, (2) fire employees, (3) promote employees, (4) demote employees, evaluate employees, (5) or establish wage increases for employees.[37] It is undisputed that Mr. Fitzgerald did not have the authority to make these decision and that only the Area Manager had that authority.[38] Ms. Griffin argues that because training opportunities were at Mr. Fitzgerald's discretion, he was her "statutory supervisor." However, this training had no effect on when an employee was

---

[33] *Rosales v. City of San Antonio*, 2001 WL 1168797, 2001 U.S. Dist. LEXIS 10282, at *26 (W.D.Tex. July 13, 2001); *accord Parkins v. Civil Constructors Of Ill., Inc.*, 163 F.3d 1027, 1033 (7th Cir. 1998).

[34] *Rosales*, 2001 U.S.Dist. LEXIS 10282 at *29.

[35] *Fontenot v. Buus*, 370 F.Supp. 2d 512, 517 (W.D. La. 2004).

[36] See *Pfau v. Reed*, 1997 U.S. App. LEXIS 36770, at *21 (5 th Cir. 1997)(holding that alleged harasser, a "first-line supervisor" was not an agent within the meaning of Title VII because he "lacked the authority to hire and fire employees and could only recommend that employees receive awards or be subject to disciplinary action).

[37] Defendant's exhibit C, Fitzgerald depo. pp. 113-115.

[38] *Id.*

promoted.[39] The Court finds that Plaintiff's argument lacks merit. The "essence of supervisory status is the authority to affect the terms and conditions of the victim's employment."[40] Specifically, the harassing employee must have "the power to hire, fire, demote, promote, transfer, or discipline an employee."[41] An employee does not qualify as a supervisor for purposes of imputing liability to the employer without an entrustment of at least some of this authority.[42] It is undisputed that Mr. Fitzgerald's position as foreman or unit supervisor held little if any authority that would affect the terms and conditions of Ms. Griffin's employment. Accordingly, the Court finds that Mr. Fitzgerald is not a statutory supervisor within the meaning of Title VII.

As previously stated, employers are liable for a co-employees' harassment only when they have been negligent either in discovering or remedying the harassment.[43] Ms. Griffin bears the burden of proving that Citgo "knew or should have known" of the harassment and failed to take prompt remedial action.[44] "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability."[45]

---

[39] Defendant's exhibit C, Fitzgerald depo., pp. 114-15; Defendant's exhibit F, Collective Bargaining Agreement Lake Charles Metal Trades Council and CITGO, 2002-2006 ("CBA"), pp. 37-41.

[40] *Parkins*, 163 F.3d at 1034; *Jones v. John Morrell & Co.*, 354 F.3d 938 (8th Cir. 2004); *Mikels v. City of Durham, N.C.*, 183 F.3d 323 (4th Cir. 1999); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002).

[41] *Parkins*, 163 F.3d at 1034.

[42] *Id.*

[43] *Perry v. Harry Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997).

[44] *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 2000).

[45] *Hockman v. Westward Comms., LLC*, 407 F.3d 317, 329 (5th Cir. 2004); *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402 (5th Cir. 1993).

An employer fulfills its legal obligation to take prompt remedial action when its action is "reasonably calculated" to end the alleged harassment.[46]

Ms. Griffin has submitted no evidence that Citgo had either actual or constructive knowledge of the alleged harassment prior to the time she met with Citgo's Labor Relations Manager and Coordinator on January 27, 2005.[47] Furthermore, Ms. Griffin admits that she did not disclose any of the alleged harassing acts by Mr. Fitzgerald to anyone with Citgo, either management or otherwise prior to this date.[48] Upon learning of the allegations, Citgo immediately investigated the matter. Citgo has submitted summary judgment evidence that it conducted two lengthy interviews with Ms. Griffin and interviewed 37 of her co-workers concerning their knowledge of any harassment in the Coker Unit specifically or in the Refinery generally.[49] Ms. Griffin takes issue with the fact that Mr. Fitzgerald testified that he did not know the specific "misconduct" for which he was terminated.[50] Ms. Griffin then takes a giant leap and concludes that Citgo failed to investigate her allegations of sexual harassment. The Court will not consider Ms. Griffin's "speculation" without evidence that the investigation by Citgo involved something other than the alleged sexual harassment.

Shortly after Citgo commenced the investigation, on February 1, 2005, Mr. Fitzgerald was

---

[46] *Skidmore v. Precision Printing & Pkg'g, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999).

[47] Defendant's exhibit B, Baumgarten affidavit, ¶ 17.

[48] Defendant's exhibit A, Griffin depo., pp. 145-146.

[49] Defendant's exhibit B, Baumgarten affidavit, ¶ 21, 23.

[50] Defendant has submitted summary judgment evidence that the sole reason Mr. Fitzgerald was not apprised of the specific misconduct for which he was being terminated was to protect Ms. Griffin's privacy, pursuant to her own request for confidentiality. (Defendant's exhibit B, Baumgarten affidavit, ¶ 29.

suspended without pay and instructed not to have any contact with Citgo employees in his unit.[51] In fact, after January 28, 2005, Ms. Griffin never worked with Mr. Fitzgerald again.[52] Mr. Fitzgerald was terminated on February 25, 2005 at the conclusion of the investigation. The Court concludes that Ms. Griffin has failed to submit summary judgment evidence to create a genuine issue of fact for trial to dispute the fact that Citgo had neither actual nor constructive knowledge of the alleged harassment until January 27, 2005. The Court further concludes that Ms. Griffin has failed to submit summary judgment evidence to create a genuine issue of fact for trial to dispute the fact that Citgo took prompt remedial action upon learning of the alleged harassment.

*Prescription*

Citgo further maintains that the *quid pro quo* sexual harassment claims must be dismissed because it has prescribed. A Charge of Discrimination must be filed within 300 days of the alleged unlawful employment practice.[53] This 300-day requirement is a prescriptive period and as such, a party's failure to timely submit a claim absolutely precludes recovery.[54] The Supreme Court has held that discrete acts of discrimination occurring more than 300 days before the filing of an EEOC Charge must be dismissed as prescribed: "[Title VII] precludes recovery for discrete acts of discrimination. . . that occur outside the statutory time period."[55] Citgo maintains that Ms. Griffin did not timely file her Charge of Discrimination as to her claims of *quid pro quo* sexual harassment.

---

[51] *Id.* at ¶ 22.

[52] *Id.* at ¶ 30.

[53] 42 U.S.C. § 2000e-5(e) (West 2009); *Janmeja v. Bd. of Supervisors of La. State Univ.*, 96 Fed.Appx. 212, 214 (5th Cir. 2004).

[54] *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir. 2002).

[55] *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

In her Complaint, Ms. Griffin alleges that she was subjected to *quid pro quo* harassment on two or three incidents when Mr. Fitzgerald allegedly promised to train her for the Chief Operator position if she would have sexual intercourse with him.[56] On June 12, 2008 Ms. Griffin testified under oath while being deposed that after she returned from medical leave which started on August 7, 2004, that Mr. Fitzgerald never again asked her for sexual favors.[57] Ms. Griffin argues in her opposition brief that the request for sexual favors and/or inappropriate comments continued until January 2005. Ms. Griffin submits an affidavit dated September 29, 2008 wherein she contradicts without explanation her prior deposition testimony.[58] A nonmoving party may not manufacture a dispute of fact to defeat a motion for summary judgment by submitting an affidavit that contradicts, without explanation, that party's own prior deposition testimony.[59] Because paragraph 13 of Ms. Griffin's affidavit completely contradicts her prior deposition testimony, for purposes of this motion, the Court will not consider that particular paragraph of the affidavit. The latest date that the alleged *quid pro quo* harassment could have occurred would have been August 7, 2004. Ms. Griffin filed her Charge of Discrimination on October 31, 2005,[60] the date the EEOC received the Charge.[61] Accordingly, Plaintiff's claims for these discrete acts of *quip pro quo* sexual harassment are time barred.

---

[56] Complaint, ¶ XII. (doc. #1).

[57] Defendant's exhibit A, Griffin depo. pp. 142, 149, 152.

[58] Plaintiff's exhibit 2, Griffin affidavit, ¶ 13.

[59] *Doe ex rel. v. Dallas Indep. Sch. Distr.*, 220 F.3d 380, 386 (5th Cir. 2000); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n.23 (5th Cir. 1992).

[60] Defendant's exhibit E, EEOC Charge.

[61] A Charge of Discrimination is deemed to be filed with the EEOC upon receipt of the document. 29 C.F.R. 1601.13 (2007).

*Hostile work environment*

An employer's liability for hostile work environment sexual harassment claim depends upon whether the alleged harasser is the victim's supervisor or merely a co-employee.[62] Citgo maintains that Mr. Fitzgerald is not a supervisor within the meaning of Title VII, and Ms. Griffin's hostile work environment sexual harassment claim must also fail because Ms. Griffin cannot present sufficient summary judgment evidence in support of her claim.

The Court has already concluded that Mr. Fitzgerald is not a statutory supervisor within the meaning of Title VII, thus, the hostile work environment claims must be analyzed pursuant to the co-worker framework. The Plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

While the analysis in "co-worker" and "supervisor" hostile work environment sexual harassment claims are similar, a plaintiff in a "co-worker" sexual harassment claim bears the burden of proving that their employer "knew or should have known" of the harassment and failed to take prompt remedial action.[63] As we have previously stated and for the reasons stated herein, Citgo had no knowledge of the alleged harassment until January 27, 2005 when Ms. Griffin reported it. Ms. Griffin has presented no summary judgment evidence to dispute that fact. Furthermore, we previously held and for the reasons stated herein, that Citgo took prompt remedial action upon learning of Ms. Griffin's alleged harassment. Ms. Griffin has failed to present summary judgment

---

[62] *Faragher v. City of Boca Raton*, 524 U.S. 775, 805-07, 118 S.Ct. 2275 (1998).

[63] *Sharp v. City of Houston*, 164 F.3d at 929.

14

evidence to dispute that fact. Accordingly, we hold that Citgo had no knowledge or reason to know of the harassment, and when it was notified, it took prompt remedial action.

### Retaliation claims

Ms. Griffin alleges that she was retaliated against by co-workers and Citgo for making a complaint against Mr. Fitzgerald. Ms. Griffin specifically complains of the following acts by her co-workers:

> (1) Co-worker, Todd Newell, made a statement in the presence of Ms. Griffin and several other co-workers that he intended to find out who got Mr. Fitzgerald fired and that they were going to pay.
> (2) After the statement by Todd Newell, as Ms. Griffin was walking on the first floor of the Unit a 2" X 16"bolt fell from the second floor, about one foot in front of her. Todd Newell and Celina Wilbourn were in the immediate vicinity of the direction from which the bolt originated.
> (3) On another occasion, Kenneth Fletcher, another co-worker, opened a "Quick Close Valve" and hot oil inadvertently spilled on Ms. Griffin's shoes; she was protected from injury by protective wear.
> (4) On February 27, 2005, as she was walking on the first floor of the unit, Ms. Griffin was drenched by water while Todd Newell was washing the second deck of the unit.

Ms. Griffin further complains that it took Citgo six (6) months to transfer out of the Unit after she made a complaint about the aforementioned alleged acts of retaliation. There are three elements to a *prima facie* case of retaliation under Title VII: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.[64] Plaintiff must also establish that the employer either knew or should have known about the harassment and that the employer condoned the behavior by failing to act promptly and reasonably; or that the employer orchestrated the harassment committed

---

[64] *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463 (5th Cir. 2002).

15

by the plaintiff's co-workers.⁶⁵ Pursuant to her summary judgment burden, Plaintiff must present competent evidence to support each and every element of her *prima facie* case.⁶⁶

### Hostile work environment claim

The essence of one of Ms. Griffin's claims is that her co-worker created a hostile work environment in retaliation for her filing an internal complaint. As noted by Citgo, Ms. Griffin seems to allege a claim for co-worker hostile work environment retaliation. Citgo maintains that the Fifth Circuit has never recognized a claim for retaliatory hostile work environment citing cases that have refused to recognize such a claim.⁶⁷ Ms. Griffin cited a Sixth Circuit case which has recognized this type of retaliation, however, she fails to cite any Fifth Circuit cases that recognizes such a claim. Be that as it may, and without deciding whether this Circuit would recognize a co-worker hostile work environment retaliation claim, Ms. Griffin has failed to present evidence to establish each element of her *prima facie* case.

There is a complete lack of evidence in this case that Citgo either knew, orchestrated or condoned the alleged co-worker retaliation. In fact, when Plaintiff reported her concerns to Citgo management on February 27, 2008, Citgo investigated the allegations and interviewed all involved

---

⁶⁵ *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 347 (6th Cir. 2008)("an employer will be liable for the coworker's actions if (1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination, (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstance").

⁶⁶ *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

⁶⁷ *Bryan v. Chertoff*, 217 Fed. Appx. 289, 293 (5th Cir. 2007); *Johnson v. JE Merit Constructors, Inc.*, 2007 WL 4162881, at *17 (M.D. La. 2007); *Fallon v. Potter*, 2008 U.S.App. LEXIS 9659 (5th Cir. 2008).

employees.[68] Ms. Griffin admits that after she complained to management no further acts or alleged retaliatory harassment occurred. Thus, Ms. Griffin has failed to create a genuine issue of material fact for trial as to Citgo's knowledge, participation or condoning of the alleged acts, and it is undisputed that Citgo took immediate action once it learned of the alleged incidents. Therefore, even if this Circuit did recognize such a claim, it would be dismissed.

*Retaliation*

Ms. Griffin alleges that Citgo retaliated against her for filing the claims of sexual harassment by not transferring her out of the Unit quickly enough. Citgo maintains that the "delay" is not an adverse employment action as defined by controlling law, nor is there a causal link between the alleged delay and her complaints. The Court agrees.

After Ms. Griffin through her attorney requested that she be transferred out of the Unit she currently worked in, Citgo and Ms. Griffin's attorney worked together to set the terms and conditions of the position Ms. Griffin wanted via letters between the parties from February 25, 2005 through May 26, 2005.[69] The negotiations resulted in Citgo creating a new position specifically for Ms. Griffin as an Industrial Hygiene Advisor in the Medical Department. Ms. Griffin's attorney informed Citgo via a letter dated June 27, 2005 that Ms. Griffin accepted the job offer. The Collective Bargaining Agreement required that the job be formally posted before Ms. Griffin could be placed in that position. The position was posted on July 22, 2005.[70] Ms. Griffin started her new job on August 29, 2005.[71]

---

[68] Defendant's exhibit A, Baumgarten affidavit, ¶ 16.

[69] Defendant's exhibit B, Griffin depo. pp. 298-300., Defendant's exhibits G, L, M, and N.

[70] Defendant's exhibit J.

[71] Defendant's exhibit A, Baumgarten affidavit, ¶¶ 28, 29; Defendant's exhibit J.

Ms. Griffin complains that this delay was another form of retaliation by Citgo. The Court finds that Citgo's conduct was not an adverse employment action as defined by Fifth Circuit law.[72] Furthermore, both of the positions that Ms. Griffin initially requested would have also taken months of training before she could have been placed in those positions. Accordingly, because Plaintiff cannot establish that an adverse employment action was taken by Citgo, this claim must fail.

*Punitive damages*

Ms. Griffin also seeks punitive damages for the alleged sexual harassment and retaliation she claims to have suffered. An employer may be held liable for punitive damages in a Title VII action if "(1) its agent (whose actions lead to liability) is employed in a position of managerial capacity, (2) the agent acts within the scope of employment, and (3) the agent acts with malice or reckless indifference towards the federally protected rights of the plaintiff.... [h]owever, such liability may not be imputed if the agent's actions are contrary to the employer's good faith effort to comply with" Title VII of the Civil Rights Act.[73] The Court concludes for the reasons set forth above that Mr. Fitzgerald was not employed by Citgo in a managerial capacity. We also find that any harassing conduct taken by Mr. Fitzgerald were contrary to Citgo's good faith efforts to comply with Title VII.

## CONCLUSION

For the reasons set forth above, the motion to strike Plaintiff's exhibit 10 attached to her opposition memorandum will be granted and the recorded telephone conversations will be stricken

---

[72] See e.g., *Sabzevari v. Reliable Life Ins. Co.*, 264 Fed.Appx. 392, 396 (5th Cir. 2008)(lateral transfers or denial thereof, as a matter of law, do not amount to materially adverse employment actions).

[73] *Green v. Admins. of Tulane Educ. Fund*, 284 F.3d 642, 653 (5th Cir. 2002).

from the record, the motion to dismiss the sexual harassment and punitive damages claims will be granted, and the motion to dismiss the retaliation and punitive damage claims will be granted.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 20th day of October, 2008.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE